**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ALICIA ST. LEGER, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 12-cv-6138 |
| v. | ) ) | |
| THEHUFFINGTONPOST.COM, INC., a Delaware corporation, | ) ) ) | Judge: |
| *Defendant*. | ) ) ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Alicia St. Leger brings this class action complaint against Defendant TheHuffingtonPost.com, Inc. ("Huffington Post") to stop Defendant's practice of making illegal text message calls to cellular telephones, and to obtain redress for all persons injured by its conduct. For her Class Action Complaint, Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1.      In an effort to increase viewership and revenue, Huffington Post, the proprietor of the well-known news website www.huffingtonpost.com, encourages visitors to its website to subscribe to receive "daily" news alerts in the form of "text message" calls to their cellular phones. Once subscribed, Defendant floods consumers' cellular phones with multiple text message calls every day, frequently transmitting unwanted text messages at all hours of the day and night.

1

2.      Frustrated with Defendant's delivery of excessive automated text message calls (hereinafter, "wireless spam"), Plaintiff and members of the putative class opted-out of receiving further wireless spam from Huffington Post. Despite this, Defendant has continued to transmit wireless spam to Plaintiff and other consumers throughout the nation long after they have opted-out from receiving any text message calls from Huffington Post.

3.      By continuing to effectuate this unsolicited wireless spam, Defendant has caused such consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies unsolicited calls to one's cellular telephone, but also because consumers, like Plaintiff, actually have to pay their cell phone service providers for the receipt of such text message calls, notwithstanding that they are made in violation of specific legislation on the subject.

4.      In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), which protects the privacy right of consumers to be free from unsolicited automated calls to cellular telephones.

5.      On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of actual and statutory damages to the class members, together with costs and attorneys' fees.

**PARTIES**

6.      Plaintiff Alicia St. Leger is a resident of Illinois.

7.      Defendant is the proprietor of a popular news and information website (www.huffingtonpost.com).  Defendant is a Delaware corporation with its principal place of

2

business located in New York.  It does business throughout the United States, including in Illinois and in this judicial District.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.

9.    This Court has personal jurisdiction over the Defendant because Defendant transacts business in this District and nationwide, and sent the unauthorized text message calls to Plaintiff's cellular phone within this District.

10.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b) because Defendant transacts business in this District and a substantial part of the events concerning the wireless spam at issue occurred in this District, as Defendant's calls were received by Plaintiff within this District.

## COMMON ALLEGATIONS OF FACT

11.    In recent years, marketers and online service providers, who often have felt stymied by federal laws limiting solicitation over facsimile machines and e-mail, have increasingly looked to cellular telephones through which to send bulk correspondence cheaply.

12.    A "Short Message Service" or "SMS" is a messaging system that allows cellular phone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

13.    An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device.  When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.  As cellular telephones are inherently mobile and are frequently carried on their

owners' person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

14.     Unlike more conventional communications, unsolicited telephone calls to cellular telephones frequently cost recipients money because cell phone users like Plaintiff must pay their respective wireless service providers either for each text message call they receive or else incur a usage allocation deduction to their text plan for each call they receive, regardless of whether or not the call is authorized.

15.     In or about March 2012, Plaintiff visited the Huffington Post website and was prompted to sign up to receive Defendant's "Daily Brief"—a daily notification regarding current and breaking news stories—via text message. Plaintiff registered her cell phone number to receive "Daily Brief" text messages based on Defendant's representations that Plaintiff could opt-out of the service without penalty at any time and that only a single text message per day with news and information would be sent by Defendant.

16.     In reality, however, Huffington Post sends "Daily Brief" subscribers large amounts of wireless spam. Immediately after signing up to receive limited text message alerts, Plaintiff began to receive numerous text messages from Huffington Post every day at all hours of the day and night. The "from" field of such transmissions was identified cryptically as "delivery@mx.sailthru.com."

17.     Plaintiff repeatedly replied "Stop" to the sender of the text messages to no avail. Unable to discontinue the messages by replying to the message, Plaintiff resorted to attempting to contact Defendant through other channels to unsubscribe from receiving the text messages.

18.     For instance, on or about June 19, 2012, Plaintiff emailed Defendant at numerous addresses identified on Defendant's website, including "info@huffingtonpost.com,"

4

"privacy@huffingtonpost.com," and "legal@huffingtonpost.com," explicitly requesting that Defendant cease sending text messages to her cellular phone. Plaintiff further contacted Defendant through the "Contact Us" link on Defendant's website www.huffingtonpost.com and communicated her desire to opt-out of receiving further text messages.

19.     Plaintiff's opt-out requests were repeatedly ignored, and Defendant continued to send Plaintiff multiple text messages each day, including in response to Plaintiff's opt-out request. Indeed, in June 2012, Defendant sent the following message to Plaintiff's cell phone in response to Plaintiff's opt-out request:

> FOR MORE INFO, GO TO HTTP://AOLTXT.COM/HELP
> OR HELP@AOLTXT.COM.  STOP TO CANCEL.
> MSG&DATA RATES MAY APPLY

20.     Shortly after receiving the above message, Plaintiff replied "STOP" again, thereby further rescinding yet again any prior express consent to Defendant to send text messages to Plaintiff's cellular phone.

21.     Further, aware that Huffington Post is owned by AOL, Inc., and having received text messages referencing "aoltxt.com," Plaintiff contacted AOL's customer service department and again requested that Defendant cease transmitting text messages to Plaintiff's phone.

22.     Despite having expressly informed Defendant (and Defendant's parent company) on multiple occasions to discontinue the transmission of text messages to her cellular phone, Defendant continues to send Plaintiff multiple unsolicited text messages to her phone at virtually all hours of the day.

**CLASS ACTION ALLEGATIONS**

23.     Plaintiff brings this action on behalf of herself and a class (the "Class") defined as follows: All persons in the United States and its territories who received one or more text

messages from Defendant or its agents after requesting that the text messages cease, or after otherwise communicating to Defendant or its agents that Defendant did not have consent to send any text messages to that telephone number.

24.     In order to make its *en masse* transmission of text messages economical, Defendant uses lists containing thousands of consumers' cellular telephone numbers.  As such, the Class consists of hundreds or thousands of individuals who did not consent to receive such messages or who revoked any such prior consent, making joinder impractical.

25.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.  Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

26.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

27.     Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

28.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other

6

members of the Class.  Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

29.      There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include, but are not limited to, the following:

(a)      whether Defendant and/or its agents sent one or more text messages to the Class members without the consent of the Class members;

(b)      whether the text messages sent by or on behalf of Defendant violate the TCPA;

(c)      whether Defendant and/or its agents used an automatic telephone dialing system to transmit the text messages at issue;

(d)      whether Defendant's conduct violated the Class members' respective rights to privacy; and

(e)      whether Defendant's conduct was willful such that the Class members are entitled to treble damages.

## COUNT I
### (Violation of the Telephone Consumer Protection Act, 47 U.S.C. 227, et seq., on behalf of the Class)

30.      Plaintiff incorporates by reference the foregoing allegations.

31.      Defendant made unauthorized commercial text calls using an automatic telephone dialing system to the wireless telephone numbers of Plaintiff and the other members of the Class.

32.      These text calls were made *en masse* and without the prior express consent of the called parties, including Plaintiff and the other members of the Class.

33.      Defendant has, therefore, violated the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

34.     As a result of Defendant's illegal conduct, the members of the Class suffered actual damages and, under 47 U.S.C. §227(b)(3)(B), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA.

35.     Because Defendant was made aware of the Class members' lack of consent to receive such text messages, Defendant's misconduct was willful and knowing, and the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and members of the Class.

WHEREFORE**,** Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.     An order certifying the Class as defined above;

2.     An award of actual and/or statutory damages;

3.     An injunction requiring Defendant to cease all unauthorized text message activities;

4.     An award of reasonable attorneys' fees and costs; and

5.     Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.


Dated:  August 3, 2012

Respectfully submitted,

ALICIA ST. LEGER, individually and on behalf of a class of similarly situated individuals


/s/ Bradley M. Baglien
One of her attorneys

Evan M. Meyers
Bradley M. Baglien
EDELSON MCGUIRE, LLC
350 North LaSalle Street
13th Floor
Chicago, Illinois 60654
emeyers@edelson.com
bbaglien@edelson.com
Telephone: (312) 589-6370
Fax: (312) 589-6378